_____



SO ORDERED,

*Edward Ellington*

**Judge Edward Ellington**
**United States Bankruptcy Judge**
**Date Signed: December 13, 2018**

The Order of the Court is set forth below. The docket reflects the date entered.
_____

### IN THE UNITED STATES BANKRUPTCY COURT FOR THE
### SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE:** | **CHAPTER 7** |
| **GLEN LEON COLLINS, SR.** | **CASE NO. 1700281** |
| **CHARLOTTE DENISE COLLINS** | |
| | |
| **TRUSTMARK NATIONAL BANK** | |
| | |
| **VS.** | **ADVERSARY NO. 1700041** |
| | |
| **GLEN LEON COLLINS, SR. AND** | |
| **CHARLOTTE DENISE COLLINS** | |

| | |
|---|---|
| Hon. Eileen N. Shaffer | Attorney for Debtors |
| eshaffer@eshaffer-law.com | |
| Post Office Box 1177 | |
| Jackson, MS  39157 | |
| | |
| Hon. Timothy J. Anzenberger | Attorney for Trustmark National Bank |
| tim.anzenberger@arlaw.com | |
| 1018 Highland Colony Parkway, Suite 800 | |
| Ridgeland, MS  39157 | |

Edward Ellington, Judge

**MEMORANDUM OPINION**

**THIS MATTER** came before the Court on the *Complaint* (Adv. Dkt. #1) filed by Trustmark National Bank and the *Response to Complaint Objecting to Discharge or to Determine the Dischargeability of Debt* (Adv. Dkt. #11) filed by Glen Leon Collins, Sr. and Charlotte Denise Collins. Having considered same, the evidence presented at trial, and the respective briefs filed by the parties, the Court finds that Mr. Collins should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and that Mrs. Collins is entitled to a discharge pursuant to 11 U.S.C. § 727(a).

**FINDINGS OF FACT**[1]

C & C Investment Properties, LLC (C & C) entered into various promissory notes and deeds of trust with Heritage Bank of Carthage, Mississippi (Heritage Bank).[2] C & C is owned by Glen Collins. According to the trial testimony of Glen Collins, C & C purchased foreclosed properties from Heritage Bank. C & C bought the properties to renovate, and then "flip"[3] or rent.[4] Both Mr. and Mrs. Collins executed guarantees on C & C's loans with Heritage Bank.[5]

In 2010, C & C and Mr. Collins (Plaintiffs) filed suit against Heritage Bank (C & C Lawsuit)

---

[1] These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

[2] These promissory notes and deeds of trust were not introduced into evidence, therefore, the Court is unsure of the exact date the promissory notes and deeds of trust were executed.

[3] The term "flipping" as used in real estate refers to the buying of a house that needs repair, fixing it up, and then (hopefully) reselling it for a profit.

[4] Trial Tr. at 10.

[5] *Id*. at 15-16.

2

in the Circuit Court of the First Judicial District of Hinds County, Mississippi. In 2012, the Federal Deposit Insurance Corporation, as Receiver for the Heritage Banking Group, removed the lawsuit from the Circuit Court of the First Judicial District of Hinds County, Mississippi to the United States District Court for the Southern District of Mississippi. In the C & C Lawsuit, the Plaintiffs asserted claims against Heritage Bank and/or defenses to the promissory notes.[6]

Subsequent to C & C entering into the promissory notes and deeds of trust, Heritage Bank failed.[7] Trustmark National Bank (Trustmark) purchased Heritage Bank's assets from the FDIC (as the receiver of Heritage Bank). The promissory notes and deeds of trust executed by C & C and guaranteed by the Collins were included in the assets purchased by Trustmark. Other than the promissory notes purchased from Heritage Bank, the Collins were not indebted to Trustmark.

Once Trustmark owned the promissory notes and deeds of trust, Trustmark was substituted as the defendant in the C & C Lawsuit. Trustmark filed a counterclaim against the Collins and C & C.[8] Due to Trustmark's purchase of Heritage Bank's assets from the FDIC, the Plaintiffs and Mrs. Collins were precluded from asserting against Trustmark the claims and/or defenses as to the promissory notes and/or deeds of trust they had originally plead against Heritage Bank.[9]

On February 22, 2016, a *Final Judgment*[10] (Judgment) against the Plaintiffs and Mrs. Collins

---

[6]*Id.* at 36-37.

[7]According to the web site of the Federal Deposit Insurance Company (FDIC), the Mississippi Department of Banking and Consumer Finance closed Heritage Bank in 2011. The FDIC was appointed the receiver. *See* https://www.fdic.gov/bank/individual/failed/heritage-ms.html.

[8]Trial Tr. at 17.

[9]*Id.* at 37.

[10]Trial Exhibit P1.

3

was entered in the United States District Court for the Southern District of Mississippi. The Judgment was "in the amount of $445,378.62 in principal, interest, and late charges, plus $57.94 per diem after August 7, 2015, and an award of legal expenses and attorneys' fees in the amount of $150,886.61."[11]

On July 12, 2016, a *Petition to Enroll a Foreign Judgment*[12] (Enrollment Petition) was filed in the Circuit Court of the First Judicial District of Hinds County, Mississippi. The *Certificate of Service* attached to the Enrollment Petition states that the Plaintiffs, Mrs. Collins, and their attorneys were mailed a copy of the Enrollment Petition on July 11, 2016.

In 2016, the Collins had a joint checking account with Regions Bank (Regions Account).[13] The names on the account were: Glen L. Collins and Charlotte Collins. Mr. Collins testified that while their individual names are on the Regions Account, "this [account] really . . . belongs to C&C Investment Properties. I used [it] as my business [account]."[14]

According to the bank statement introduced at trial (Trial Exhibit P4), on July 7, 2016, the Regions Account had a balance of $78,964.57. Beginning on July 12, 2016, the following withdrawals[15] were made from the Regions Account:

---

[11]*Complaint*, Adv. Proc. No. 1700041EE, Adv. Dkt. #1, Exhibit A, *Final Judgment*, June 29, 2017.

[12]Trial Exhibit P2.

[13]Trial Exhibit P4.

[14]Trial Tr. at 22.

[15]There were two checks written during this time period payable to other entities. Check number 1050 in the amount of $1,450.30 was written on July 4, 2016, and cleared the Regions Account on July 7, 2016. This check was made payable to Saks. Check number 1053 was written on July 20, 2016. This check was made payable to Mozingo. These two checks are not part of the disputed withdrawals from the Regions Account.

4

| Date | Check No.<br>(if applicable) | Amount | Withdrawn By/<br>Payable To |
|---|---|---|---|
| 07/12/2016 | | $25,000.00 | Glen Collins |
| 07/14/2016 | | $25,000.00 | Glen Collins |
| 07/18/2016 | | $20,000.00 | Glen Collins |
| 07/20/2016 | 1052 | $2,000.00 | Glen Collins |
| 07/21/2016 | 1054 | $3,700.00 | Glen Collins |
| **TOTAL:** | | **$75,700.00** | |

(Trial Exhibit P4). Mr. Collins testified that he withdrew these funds in order to repay his brother, Trence Collins, for money his brother had loaned Mr. Collins or had loaned his business. (Trial Tr. at 27-29).

On January 27, 2017, Mr. and Mrs. Collins (Debtors) filed a joint petition for relief under Chapter 7 of the United States Bankruptcy Code. Stephen Smith was appointed the Chapter 7 Trustee. Also on January 27, 2017, the Debtors filed their *Summary of Your Assets and Liabilities and Certain Statistical Information* (Schedules) and *Statement of Financial Affairs for Individuals Filing for Bankruptcy*[16] (SOFA) (Dkt. #3).

In answer to question number 7 and question number 8 on their SOFA (on page 37 of 54), the Debtors answered *No* to the questions regarding payments to an insider within one year of filing bankruptcy. Question number 18 on the SOFA (on page 39 of 54) asks: "[w]ithin 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?"[17] The Debtors

---

[16] Trial Exhibit P3.

[17] Trial Exhibit P3, at 39 of 54.

5

answered that they had traded-in a BMW in August of 2015, and a Ford F150 in August of 2016. The Debtors did not disclose any payments to Trence Collins.

In answer to question number 20 on their SOFA (on page 39 of 54), the Debtors stated that in June of 2016, they had closed or transferred funds from the Regions Account. The answer to question number 20 states:

| Name of Financial Institution | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| Regions | XXXX- | ■Checking | 6/16 85% of funds belonged to brother | $65,000.00[18] |

On April 25, 2017, the Debtors filed *Amended Summary of Your Assets and Liabilities and Certain Statistical Information* (First Amended Schedules) (Dkt. #57). In their First Amended Schedules, the Debtors added several unsecured creditors and changed the value of Mr. Collins' NFL Concussion Lawsuit from $0.00 to unknown.

On June 29, 2017, Trustmark commenced the above-styled adversary proceeding with the filing of its *Complaint* (Complaint) (Adv. Dkt. #1). In its Complaint, Trustmark alleges that the Debtors withdrew at least $75,700.00 out of the Regions Account and transferred the funds to an insider, Mr. Collins' brother, Trence Collins. Trustmark alleges that these transfers were within one year of the petition and that the transfers were not disclosed in the Debtors' original Schedules and SOFA, and that as a result, the Debtors were intending to hinder, delay, or defraud Trustmark and their other creditors. Therefore, Trustmark alleges that the Debtors are not entitled to a discharge

---

[18]*Statement of Financial Affairs for Individuals Filing for Bankruptcy*, Case No. 1700281EE, Dkt. #3, p. 39 of 54, Jan. 27, 2017.

pursuant to 11 U.S.C. § 727(a)(2)(A).[19] In the alternative, Trustmark alleges that the withdrawals from the Regions Account constitute fraudulent transfers under § 548 and Miss. Code § 15-3-107. Therefore, Trustmark alleges that the Debtors are not entitled to have the amount of the withdrawals discharged pursuant to § 523(a)(2)(A).

In their *Response to Complaint Objecting to Discharge or to Determine the Dischargeability of Debt* (Response) (Adv. Dkt. #11) filed on August 9, 2017, the Debtors deny that Trustmark is entitled to any relief requested in its Complaint.

On September 7, 2017, subsequent to the filing of the adversary proceeding, the Debtors filed a second amendment to their *Summary of Your Assets and Liabilities and Certain Statistical Information* (Second Amended Schedules) and an amended *Statement of Financial Affairs for Individuals Filing for Bankruptcy*[20] (Dkt. #108) (Amended SOFA). In their Second Amended Schedules, the Debtors added two creditors to *Schedule E/F: Creditors Who Have Unsecured Claims*. The creditors added were Krunchcash, LLC with a $75,000.00 claim and Trence Collins with a $40,000.00 claim. In their Amended SOFA, the Debtors amended question 7 to state that Trence Collins had been paid a total of $10,000.00 in July of 2016. Question 7 further states that the Debtors owed Trence Collins a balance of $40,000.00.[21]

On October 23, 2017, the Debtors filed another amendment to their *Summary of Your Assets*

---

[19] Hereinafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

[20] Trial Exhibit D-1.

[21] The Debtors also added to question 9, a lawsuit in Rankin County, Mississippi, against Charlotte Collins. This lawsuit involved Charlotte Collins' business, Pilates for Life, LLC, and is not relevant to the above-styled adversary.

7

*and Liabilities and Certain Statistical Information* (Dkt. # 111) (Third Amended Schedules).[22] The only difference the Court can find between the Second Amended Schedules and the Third Amended Schedules is that Trence Collins' claim was moved from page 2 of 9 to page 7 of 9. All of the other information appears to be the same.

After the adversary was filed, Mr. Collins received information regarding the settlement of his NFL Concussion Lawsuit. Mr. Collins' attorneys believed that once settled, Mr. Collins would receive enough money to pay Trustmark and his other creditors in full. Trustmark, however, was not inclined to wait on the settlement, so the adversary was set for trial. The trial on the adversary was held on September 13, 2018. When the last brief was filed on October 22, 2018, the Court took the matter under advisement.

## CONCLUSIONS OF LAW

### I. Jurisdiction

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(1) and (2)(I) and (J).

### II. § 727(a)(2)(A)

Under 727(a), a court must grant a debtor a discharge unless one of the enumerated exceptions for denying a debtor a discharge under § 727(a) is proven. "The exceptions are construed strictly against the creditor and liberally in favor of the debtor." *The Cadle Co. v. Duncan (In re Duncan),* 562 F.3d 688, 695 (5th Cir. 2009) (citation omitted). The burden of proof is on the creditor and "must be proven by a preponderance of the evidence. *See Grogan v. Garner,* [498] U.S.

---

[22]Trial Exhibit D-2.

[279], 111 S. Ct. 654, 660, 112 L. Ed. 2d 755 (1991)." *Beaufouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992).

Trustmark alleges that the Debtors should be denied a discharge pursuant to § 727(a)(2)(A). Section 727(a)(2)(A) prohibits a debtor from receiving a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred . . . (A) property of the debtor, within one year before the date of the filing of the petition."[23] The underlying purpose of § 727(a)(2)(A) "'is to deny a discharge to those debtors who, intending to defraud, transfer property which would have become property of the bankrupt estate.' *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989)."[24] In order to prevail under § 727(a)(2)(A), Trustmark must prove the following four elements: "'(1) a transfer of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor. . . . *Id.*'"[25]

### A. Charlotte Collins

The Court finds that Trustmark has not met its burden under § 727(a)(2)(A) as to Charlotte Collins. Other than proving that Mrs. Collins was a joint account holder on the Regions Account, Trustmark has not met the first element and proven that Mrs. Collins transferred any property.

Mr. Collins testified that the Regions Account was created as a personal account, but it was not used as a personal account by the Debtors. Instead, he used the Regions Account to run his business, C & C. (Trial Tr. at 22). Mrs. Collins testified that she had no control over the Regions Account, never looked at the bank statements for the Regions Account, and did not sign any of the

---

[23] 11 U.S.C. § 727(a)(2)(A).

[24] *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003); *see also Soza v. Hill (In re Soza),* 542 F.3d 1060, 1067 (5th Cir. 2008).

[25] *In re Dennis,* 330 F.3d at 701.

9

withdrawals/checks drawn on the Regions Account.[26] Upon examination of the bank statement,[27] all of the withdrawals/checks from the Regions Account which are the subject of this litigation were signed solely by Mr. Collins. The Court finds the testimony from Mr. Collins that he used the Regions Account as his business account[28] and Mrs. Collins' testimony that she had no control over the Regions Account to be credible. Trustmark failed to produce any evidence to contradict the testimony of either Debtor or to show that Mrs. Collins participated in any manner in the withdrawals from the Regions Account.

As for the preparation of the Schedules and SOFA,[29] Mrs. Collins testified that she signed the schedules but that she had limited involvement in filling out the schedules:

> Q. And you did sign the bankruptcy schedules that were filed, as you just previously testified to. Is that correct?
>
> A. I did.
>
> Q. Which did you assist in the preparation of the bankruptcy schedules?
>
> A. Only with questions that were asked.
>
> Q. Would you say that your assistance in the preparation of the schedules was limited?
>
> A. Very.

---

[26]Trial Tr. at 56.

[27]Trial Exhibit P4.

[28]As noted previously, in July of 2016, Mr. Collins wrote checks to "Saks" and to "Mozingo" out of the Regions Account. There was no testimony as to whether these checks were related to Mr. Collins' business or were for personal debts.

[29]Trustmark does not raise § 727(a)(4) (false oath or account) as a ground for denial of the Debtors' discharge. Trustmark does, however, raise the fact that the transfers were not disclosed on the Debtors' initial Schedules and SOFA to show intent to hinder, delay, or defraud a creditor.

> Q. And why was that?
>
> A. I was not involved much at all in the business. When Glen and I first started this business, I was really excited to be involved and helping to get the houses fixed up . . . .So when he would not listen to me . . . I backed out. I just – you just tell me what I need to sign, and that's it. . . .I couldn't even tell you where the houses were.

Trial Tr. at 56-57.

The Court finds no reason to doubt Mrs. Collins' testimony regarding the preparation of the Schedules and SOFA. No proof was presented to show that Mrs. Collins was aware of the transfers out of the Regions Account, therefore, she could not have known that the transfers should have been disclosed on their Schedules and SOFA.

The Court finds that Trustmark has not proven that Mrs. Collins transferred any property or that she had any intent to hinder, defraud, or delay her creditors. Even if Trustmark proves intent on the part of Mr. Collins, "the Code does not allow attribution of intent from spouse to spouse." *First Tex. Sav. Assoc. v. Reed (In re Reed),* 700 F.2d 986, 993 (5th Cir. 1983) (citation omitted). Consequently, the Court finds no basis exists under § 727(a)(2)(A) to deny Mrs. Collins a discharge.

### B. Glen Collins

There is no dispute that Mr. Collins transferred property within one year of the filing of the petition, consequently, Trustmark has met the first and third elements of its discharge claim. The dispute arises over the second and fourth elements that is, whether the funds transferred in the Regions Account belonged to Mr. Collins and whether he had an intent to hinder, delay, or defraud their creditors when the transfers were made.

#### 1. Did the funds belong to Mr. Collins?

On their SOFA, the Debtors list the Regions Account and state that 85% of the funds in the account belonged to Mr. Collins' brother. At trial, Mr. Collins testified that whenever he needed

11

money, his brother would loan it to him, and he used the money in his business. Mr. Collins believed the loans started in 2008 and continued over three or four years, and that his brother loaned him about $50,000.00. Further, Mr. Collins testified that there were no loan documents to evidence the loans by his brother.[30]

Mr. Collins did not introduce copies of checks from his brother or produce any other evidence to support his assertion that his brother had loaned him money. Even if he had, such evidence would support only the existence of a debt and not that the money in the Regions Account belonged to his brother. Consequently, the Court finds that the funds in the Regions Account belonged to Mr. Collins. Therefore, Trustmark has met the second element.

### 2. Did Mr. Collins have the intent to hinder, delay, or defraud his creditors?

In order to have Mr. Collins' discharge denied, Trustmark has the burden to prove that Mr. Collins had actual intent to defraud his creditors.

> "Moreover, evidence of actual intent to defraud creditors is required to support a finding sufficient to deny a discharge. Constructive intent is insufficient." [*Chastant*, 873 F.2d at 91] (quotation marks and internal citation omitted).
>
> Given the obvious problems of proof, though, "[a]ctual intent . . . may be inferred from the actions of the debtor and may be shown by circumstantial evidence." *Id.* We have identified several factors that tend to prove actual intent to defraud:
>
>> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit, or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

---

[30]Trial Tr. at 11-14.

*Id.*

*In re Dennis*, 330 F.3d at 701–02.

At trial, Mr. Collins testified that he had no intent to defraud his creditors. Therefore, the Court must examine the six (6) badges of fraud that tend to prove actual intent to defraud as established by the Court of Appeals for the Fifth Circuit.

### a. Lack of consideration.

Mr. Collins testified that he believed his brother had loaned him approximately $50,000.00, but he had no physical documents to back up these loans. Further, Mr. Collins could not recall the date the loans were made or the specific amounts of the loans. Without any proof, the Court cannot find that Mr. Collins received adequate consideration.

### b. Familial relationship between the parties.

"'[A] presumption of actual fraudulent intent necessary to bar a discharge arises when property is . . . transferred to relatives.' *In re Butler*, 38 B.R. 884, 888 (Bankr.D.Kan.1984)."[31] Since the Debtor testified[32] that he withdrew the money from the Regions Account and transferred the money to his brother, a presumption of actual fraudulent intent arises. The burden then shifted to Mr. Collins to prove that he lacked fraudulent intent. The Court finds that Mr. Collins failed to rebut the presumption.

### c. The retention of possession, benefit, or use of the property in question.

Other than Mr. Collins' testimony that he withdrew the funds from the Regions Account in order to repay his brother, there was no evidence presented as to what Mr. Collins did with the

---

[31]*In re Chastant*, 873 F.2d at 91.

[32]Trial Tr. at 27-29.

13

money. Therefore, this badge of fraud is neutral.

### d. The financial condition of Mr. Collins before and after the transfer.

At trial, Mr. Collins testified as to his financial condition when he began withdrawing the funds from the Regions Account in July of 2016:

Q. Were your assets and liabilities the same earlier that year in July of 2016?

A. Probably

Q. You didn't owe less debt at that time?

A. I owed more debt at that time.

Q. Okay. And you didn't own more property or assets at that time?

A. No, unh-unh.[33]

Therefore, the Court finds that transferring $75,700.00 from the Regions Account in July of 2016 to his brother worsened Mr. Collins' financial condition. This factor also tends to prove Mr. Collins' actual intent to defraud his creditors.

### e. The existence of pending litigation and chronology of the withdrawals.

At the time Mr. Collins began withdrawing funds from the Regions Account, Trustmark had begun collection efforts on its Judgment. The first withdrawal from the Regions Account occurred on July 12, 2016. Trustmark states several times in its arguments that it "served the [Enrollment] Petition on the Debtors on July 11, 2016, to their home address,"[34] and that is the reason Mr. Collins began withdrawing the funds from the Regions Account. The Court notes that the *Certificate of*

---

[33]Trial Tr. at 30-31.

[34]*Trustmark National Bank's Post-Trial Brief*, Adv. Proc. No. 1700041EE, Adv. Dkt. #36, p. 7, Oct. 01, 2018.

14

*Service* attached to the Enrollment Petition[35] specifically states that a true and correct copy was "placed in the United States Mail"[36] on July 11, 2016.

The Court agrees with Trustmark that the Enrollment Petition was placed in the mail on Monday, July 11, 2016, but it does not agree with Trustmark that the Debtors were aware of and had received the Enrollment Petition on July 11, 2016. Nor is there proof that when Mr. Collins made the first withdrawal on July 12, 2016, Mr. Collins was aware of or had received the Enrollment Petition in the mail. Mr. Collins testified when he made the first withdrawal on July 12, 2016, that he had not received the Enrollment Petition and was unaware of the Enrollment Petition. (Trial Tr. at 24-25).

Mr. Collins verified that his home address and C & C's address were listed correctly on the *Certificate of Service* on the Enrollment Petition.[37] Consequently, the Court does find that by July 14, 2016, when Mr. Collins made the second withdrawal (and all subsequent withdrawals) from the Regions Account, he had been physically served with the Enrollment Petition and was aware that Trustmark was attempting to collect on its Judgment. Consequently, at a minimum, the timing of the second through the fifth withdrawals from the Regions Account tend to prove actual intent to defraud.

### f.  Summary of actual intent factors.

As stated by the Fifth Circuit, actual intent to defraud creditors "may be inferred from the actions of the debtor and may be shown by circumstantial evidence." *In re Dennis,* 330 F.3d at 701

---

[35] Trial Exhibit P2.

[36] *Id.* at p. 3 of 11.

[37] Trial Tr. at 20.

15

(citation omitted). Applying the factors that tend to prove actual intent to the facts of this case, the Court finds that Mr. Collins' actions prove an actual intent to defraud his creditors. The burden then shifted to Mr. Collins to prove that he lacked the fraudulent intent to defraud his creditors, which he failed to rebut. Therefore, the Court finds that in withdrawing the funds from the Regions Account, Mr. Collins had an actual intent to defraud his creditors.

### 3. Summary of § 727(a)(2)(A).

In order to prevail under § 727(a)(2)(A), Trustmark had to prove that Mr. Collins made a transfer of his property within one year of the filing of his petition with the intent to hinder, delay, or defraud his creditors.[38] There is no dispute that Mr. Collins transferred property within one year of the filing of his bankruptcy petition. The money in the Regions Account clearly belonged to Mr. Collins. When the six (6) badges of fraud that tend to prove actual intent to defraud are examined, the balance of the badges show that when Mr. Collins withdrew the funds from the Regions Account, he had an actual intent to defraud his creditors. Therefore, Trustmark has met its burden under § 727(a)(2)(A) to deny Mr. Collins a discharge.

### III. § 523(a)(2)(A)

Trustmark alleges that the withdrawal of the funds from the Regions Account constituted fraudulent transfers, and therefore, Trustmark is entitled to a judgment in its favor for the amount of the fraudulent transfers pursuant to § 523(a)(2)(A). Since the Court found that Mr. Collins is not entitled to a discharge under § 727(a), Trustmark's § 523(a)(2)(A) claim is moot.

As to Mrs. Collins, the Court found that Trustmark failed to prove that Mrs. Collins made any transfers from the Regions Account, therefore, Mrs. Collins could not have made any fraudulent

---

[38]*In re Dennis*, 330 F.3d at 701.

16

transfers. Consequently, Trustmark's § 523(a)(2)(A) claim against Mrs. Collins should be denied.

## CONCLUSION

Discharges are favored under the Code. *Stanley v. Trinchard (In re Hale),* 500 F.3d 411, 426 (5th Cir. 2007). In order to succeed in denying the Debtors a discharge under the exceptions found under § 727(a), Trustmark has the burden of proving by a preponderance of the evidence that the Debtors' case falls under one of the enumerated exceptions. If Trustmark meets this burden, the Debtors must present evidence in rebuttal.

Trustmark alleges that the Debtors' conduct falls under the exception to discharge found in § 727(a)(2)(A). In order to prevail under § 727(a)(2)(A), Trustmark must prove the following four elements: "'(1) a transfer of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor. . . . *Id.*'"[39]

As to Mrs. Collins, the Court finds that Trustmark failed to prove that she transferred property within one year of the filing of her bankruptcy petition with the intent to hinder, delay, or defraud her creditors. Consequently, Mrs. Collins is entitled to a discharge under § 727(a). Moreover, the Court denies Trustmark's § 523(a)(2)(A) claim against Mrs. Collins.

Turning to Mr. Collins, the Court finds that Trustmark proved that he transferred property to his brother within one year of the filing of his bankruptcy petition with the intent to hinder, delay, or defraud his creditors. Consequently, Mr. Collins is denied a discharge under § 727(a)(2)(A). The denial of his discharge under § 727(a)(2)(A) renders Trustmark's claim under § 523(a)(2)(A) moot.

To the extent the Court has not addressed any of the parties' other arguments or positions, it has considered them and determined that they would not alter the result.

---

[39]*In re Dennis*, 330 F.3d at 701.

A separate judgment consistent with this Opinion will be entered in accordance with Rule 7054 of the Federal Rules of Bankruptcy Procedure.

**##END OF FINDINGS##**